Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 4902 | DATE | 8/27/2002 |
| CASE TITLE | Kenneth Scheck vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | |
|---|---|---|---|
| | No notices required. | | number of notices |
| | Notices mailed by judge's staff. | | AUG 27 2002 |
| | Notified counsel by telephone. | | date docketed |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| EF | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| KENNETH SCHECK, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 00 C 4902 |
| | ) | HONORABLE CHARLES R. NORGLE |
| JO ANNE BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

CHARLES R. NORGLE, Sr., District Judge:

Before the court is Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment. For the following the reasons, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion is granted.

## I. BACKGROUND

This case involves the judicial review of a denial of a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) & 423. Plaintiff, Kenneth Scheck ("Scheck"), applied for disability insurance benefits ("DIB") on November 13, 1997 with the Social Security Administration. Scheck alleged that he was disabled due to back pain and cervical fusion as of the date of June 2, 1989.

Scheck's back problems began in 1983, when he was diagnosed with a herniated cervical disc. Scheck underwent cervical fusion in December 1983, and did not have any further problems until April of 1993. In April of 1993, Scheck developed severe back pain followed by right leg pain.



As a result, Scheck immediately underwent a decompressive laminectomy. No other documented medical treatment or surgery for Scheck exists until 1997.

An administrative law judge ("ALJ") heard Scheck's claim for DIB and found Scheck capable of performing his past work as a distribution warehouse manager. The Appeals Council of the Social Security Administration denied an appeal by Scheck, and at that point the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. See 20 C.F.R. § 404.981. Scheck filed the instant action, pursuant to 42 U.S.C. § 405 (g), naming Jo Anne Barnhart as Defendant, in her capacity as commissioner of Social Security Administration. Scheck seeks a reversal of the ALJ's determination and award of benefits, or in the alternative a remand for a rehearing.

## II. DISCUSSION

Typically, summary judgment is permissible when "there is no genuine issue as to any material fact and. . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmoving party cannot rest on the pleadings alone, but must identify specific facts, see Cornfield v. Consolidated High School District No. 230, 991 F.2d 1316, 1320 (7th Cir. 1993), that raise more than a mere scintilla of evidence to show a genuine triable issue of material fact. See Murphy v. ITT Technical Services, Inc., 176 F.3d 934, 936 (7th Cir. 1999). In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). The court views the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. Fed. R. Civ. P. 56(c); see also Perdomo v. Browner, 67 F.3d 140, 144 (7th Cir. 1995). "In the light most favorable" simply means that summary judgment is not

appropriate if the court must make "a choice of inferences." See United State v. Diebold, Inc., 369 U.S. 654, 655 (1962), see also First Nat'l Bank of Arizona v. Cities Service Co., 391 U.S. 253, 280 (1968); Wolf v. Buss (America) Inc., 77 F.3d 914, 922 (7th Cir. 1996). The choice between reasonable inferences from facts is a jury function. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Amercian Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994) (citing Anderson, 477 U.S. at 249-50; 10 Charles A. Wright, Arthur R. Miller & Mary K. Kane, Federal Practice and Procedure: Civil § 2712, at 574-78 (2d ed. 1983)).

However, cases involving review of Social Security Administration decisions place the court in a unique situation and call for a different standard. The standard is one of "substantial evidence." See 42 U.S.C. § 405(g). The court must determine whether there is "substantial evidence" to support the decision of the Commissioner. Id. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Edward v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). The ALJ must "build an accurate and logical bridge between the evidence and the result . . . ." Shramek v. Apfel, 226 F.3d 809, 811 (7th Cir. 2000). A court must uphold "an ALJ's decision if it is reached under the correct legal standard and if it is supported by substantial evidence." Schmidt v. Apfel, 201 F.3d 970, 972 (7th Cir. 2000). If a court determines that an ALJ's decision is not supported by substantial evidence, the appropriate course of action is a remand, and not an award of benefits unless all factual issues have been resolved. See Campbell v. Shalala, 988 F.2d 741, 744 (7th Cir. 1993).

The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity due to physical or mental impairments(s) which can be expected to either result in death or last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). A "physical or mental impairment" is further defined as "an impairment that resulted from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(C). The Social Security Regulations require the ALJ to follow a five-step inquiry process to determine disability status. See 20 C.F.R. § 404.1520(a)-(f). The following must be analyzed in sequence: (1) whether the claimant is currently employed; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one listed by the Commissioner; (4) whether the claimant can perform his past work; and (5) whether the claimant is capable of performing any work in the national economy. See 20 C.F.R. § 404.1520(a)-(f); Schroeter v. Sullivan, 977 F.2d 391, 393 (7thCir. 1992). In order to meet or equal an impairment listing of the Commissioner, a claimant must satisfy all the criteria of a listing. See Sullivan v. Zebly, 493 U.S. 521, 530 (1990). If the claimant does not have a listed impairment but cannot perform his past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Pope v. Shalala, 998 F.2d 473, 477-78 (7th Cir. 1993) (citing Rhoderick v. Heckler, 737 F.2d 714, 715 (7thCir. 1984)).

"The ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability." Scivally v. Sullivan, 966 F.2d 1070, 1076 (7thCir. 1992) (citing Steward v. Bowen, 858 F.2d 1295, 1299 (7thCir. 1988)). A decision "must be based on testimony and medical evidence in the record, and the [ALJ] 'cannot make his own independent medical determination about the claimant'" Scivally, 966 F.2d at 1076 (quoting Rousey v. Heckler, 771 F.2d 1065, 1069 (7th Cir.

4

1985)). In other words "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (citations omitted). The credibility finding of an ALJ is entitled to special deference, and should not be disturbed unless patently wrong. See Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000); Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995). In this case, the ALJ has articulated her reasoning behind her decision, and the court finds that the reasoning is supported by substantial evidence based on medical evidence, or more appropriately, the lack thereof.

The ALJ first found that Scheck has not worked since the onset date of June 2, 1989. (R. 30.) Additionally, Scheck was "severely" impaired, but his impairment did not meet or equal the level of severity or duration of a listing. (R. 30-31.) Finally, the ALJ found Scheck "possessed the residual functional capacity to perform his past relevant work, and he was not disabled, pursuant to 20 CFR 404.1520." (R. 37.) On this basis, the ALJ denied Scheck's claim for benefits.

Of critical importance in this case are the determinations of whether Scheck's impairment met or equaled the level of severity and duration of a listed impairment and what Scheck's residual functional capacity was. In terms of meeting or equaling the level of severity and duration of a listed impairment, the ALJ found that "[Scheck] has not contended that his medically determinable impairments met or equaled the 'listings,' and the record contains no evidence which would support such a finding." (R. 31.) In this case, as Scheck correctly points out, the listing that the court is concerned with is § 1.05 C which states in pertinent part:

> Other vertebrogenic disorders (e.g. herniated nucleus puplosus, spinal stenosis with the following persisting for al least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

> 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
> 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory reflex loss.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.05 C (1992). Scheck argues that he meets both prongs of the listing. Scheck contends that the ALJ failed to recognize and accept the medical evidence that supports a determination of disability. Barnhart argues that Scheck fails to meet both prongs of the listing. Specifically, Barnhart contends that Scheck fails to present substantial evidence that he suffered "radicluar distribution of significant motor loss with muscle weakness and sensory and reflex loss for at least three months despite prescribed therapy." (Def.'s Response to Pl.'s Mot. for Summ. J./Def. Memo. in Support of Commissioner's Mot. for Summ. J., pg. 7.)

Additionally, the ALJ determined that Scheck "possessed the residual functional capacity to perform his past relevant work, and he was not disabled, pursuant to 20 C.F.R. 404.1520(e)." (R. 37.) Scheck argues that testimonial and medical evidence submitted established that he was incapable of performing any work. Scheck contends that the ALJ improperly discredited both his testimony and the opinion of his surgeon, Dr. Heiferman. In contrast, Barnhart argues the ALJ considered all the evidence concerning Scheck's "symptoms and his ability to do all types of substantial and gainful work activity." (Def.'s Response to Pl.'s Mot for Summ. J./Def.'s Mot. for Summ. J., pg. 11.) Barnhart contends that there was no medical evidence to support Scheck's claims of disabling pain which would have rendered him unable to work. The court is unpersuaded by either argument offered by Scheck.

The record contains the following medical evidence during the relevant time period[1]:

---

[1] Scheck claims he was disabled as of June 2, 1989. December 31, 1994 is the date that Scheck last met the disability insured status requirements of the Social Security Act. Thus, the

6

> 12/20/83 - Cervical Spine Radiographs: Marked spur encroachment on the right sided C5-C6 foramen. Minimal spur encourchament anteriorly of the bodies of C4 and C5.
>
> 4/7/93 - Lumbar Spine MRI: Disc degeneration at L4-5 and L5-S1. Evidence suggestive of mass lesion in the spinal canal at L4-5. This is probably secondary to an extruded disc fragment at this level.
>
> 4/12/93 - CT Post Myelogram and Lumbar Myelogram: The lumbar myelorgram and post myelogram CT confirms the presence of a extruded herniated disc at L4-5, the right L5 nerve root is impinged. Additionally, at L4-5 there is severe superimposed spinal stenosis secondary to hypertrophy of the facets and ligamentum flavum. Lateral recesses at L4-5 are likewise narrowed. There is less significant bulging of the disc at L5-S1 and L3-4. Additionally there is central intrathecal defect indicating a prominent filum terminale which is an anatomic variant or arachnoid adhesions.
>
> 4/13/93 - Thoracic Spine MRI: Posterior protrusion T10/T11 disc central and rightward as described. Partial effacement of the ventral subarachnoid space noted without definite compression upon the dorsal cord.
>
> 4/13/93 - Cervical Spine MRI: Severe cervical spondylosis as described. Marked flattening of the cervical cord seen at the C4-C5 and C5-C6 disc levels. Mild flattening of the cervical cord present at the C3-C4 level. Hyptertrophy involving posterior facets as described without additional, significant compromise of the spinal canal. Anterior fusion, C6 and C7.
>
> 4/14/93 - Operation: L4/L5 decompressive laminectomy with a right L4/L5 foraminotomy.

(See R. 183, 195, 245, 252-253, 255, 258.) The record also contains the testimony of Scheck. (See R. 48-83.) Scheck's testimony confirms the abovementioned records and relates the alleged pain and symptoms he suffered. Scheck complained of constant back pain, as well as loss of feeling in his legs and arms. (See R. 53,53,55). Additionally, the testimony reflects that after the surgery in April

---

critical question is if Scheck had a disabling impairment on or before December 31, 1994.

of 1993, until October of 1997. Scheck's only treatment for his spinal condition was at a Texas rural clinic and by self-medication. (See R. 58-62.) Lastly, Scheck's testifies that he was and is unable to do any lifting, and can only sit for twenty or thirty minutes and walk for thirty minutes to an hour. (See R. 66-70).[2]

The ALJ correctly identifies that there is a "dearth of documentary medical evidence concerning [Scheck's] symptoms and treatment from June 2, 1989, his alleged onset date, to December 31, 1994, his date last insured, and in particular, from June 2, 1989 to April 14, 1993, the date of his second surgery." (R. 34.) The record contains absolutely no medical evidence of back problems, pain, or any other connected ailments from the date of onset on June 2, 1989 prior to Scheck's surgery on April 14, 1993. The medical records indicated that Scheck "spontaneously" developed "low back pain followed by right leg pain" "three or four weeks" prior to the April 1993 surgery. (R. 236.) Once the surgery was performed, no further medical records exist from April of 1993 until December 31, 1994, the date last insured.

Further supporting the medical evidence, or lack thereof, is Scheck's own testimony. Scheck testified that after his surgery he was to return for a follow-up appointment with his surgeon, Dr. Heiferman. (See R. 57-58.) However, Scheck did not return for the follow-up. (See R. 57-58.) Rather, Scheck allegedly received treatment from a rural clinic in Texas and engaged in self-medication. (See R. 58-60.) This is not sufficient evidence to establish that Scheck met or equaled either prong of the listing to the severity or duration required.

---

[2] The court has taken into account all the medical evidence submitted in the record. However, the court recognizes that Scheck's particular claim limits the medical evidence from the onset date of June 2, 1989 to December 31, 1994, the date last insured.

8

The ALJ's determination of residual functional capacity involves an analysis of whether Scheck was able to perform his past relevant work, and if not, whether there was other work that existed in the national economy. See 20 C.F.R. § 404.1529. Both parties agree that Scheck's former position of a warehouse manager was a sedentary position. Sedentary work involves lifting no more than 10 pounds at a time and occasionally carrying articles like docket files, ledgers and small tools. See 20 C.F.R. § 404.1567(a).

Again the ALJ correctly notes the "dearth of documentary medical evidence." (R. 34.) As discussed previously, the record contains absolutely no medical evidence to suggest that Scheck was suffering from disabling pain other than Scheck's own self-serving statements. (See Infra p. 7.) A complaint of pain cannot be discredited "because objective medical evidence was not introduced to support the extent of the pain," neither can full credit be given to every statement of pain, "requir[ing] a finding of disabled every time a claimant states that [he or she] feels unable to work." Pope, 998 F.2d at 486.

The ALJ considered Scheck's testimony and Dr. Heiferman's opinion. In terms of Scheck's testimony, it is clear that the lack of medical evidence undermines Scheck's claims that he suffered from disabling pain. Further, Scheck's own testimony about his physical limitations is contradictory. Scheck testified that his daily activities were limited to watching television and sitting outside. (See R. 34, 64.) Yet, Scheck also testified that he could not sit at a desk for any length of time. (See R. 67-68.) The ALJ was in a better position, based upon all of the evidence, to determine how to deal with Scheck's ability to sit inside and watch television and to sit outside for other purposes and still be unable to sit at a desk, presumably inside, for employment purposes. Problems also exist with

Dr. Heiferman's opinion in terms of the time at which it was posited and its unsupported conclusion. Dr. Heiferman's opinion is dated January 6, 1999, obviously well beyond the last time he treated Scheck. There is no evidence to indicate that Dr. Heiferman ever saw Scheck again for any treatment in 1993 or 1994. In fact, Scheck's own testimony indicates that he did not see Dr. Heiferman from 1993 to 1997. (See R. 58-62.) Additionally, Dr. Heiferman's conclusion, in the January 6, 1999 opinion, that "based on [Scheck's] physical condition in 1993, he was not capable of any type of work and was unemployable," is unsupported by any medical evidence. (See R. 282.) Again, Dr. Heiferman's contact only consisted of the several days before and after surgery in April of 1993. Dr. Heiferman's conclusion is based on this limited exposure without any reference to Scheck's recovery, follow-up consultations, or further surgical procedures.

The ALJ decision was based on substantial evidence. Scheck's failure to submit any objective medical evidence, as well as unconvincing testimonial and opinion evidence allow the ALJ to conclude that Scheck was not disabled and could perform past work.

## III. CONCLUSION

For the foregoing reasons Plaintiff's motion for summary judgment is denied and Defendant's motion for summary judgment is granted. The decision of the Social Security Commissioner is affirmed.

IT IS SO ORDERED

ENTER:

_____
CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 8/27/02